**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 18-1112**

---

ANGELA LAWRENCE,

Plaintiff − Appellant,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant – Appellee.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:16-cv-01310-CCE-JLW)

---

Argued: September 18, 2019                          Decided: October 24, 2019

---

Before WYNN, DIAZ, and FLOYD, Circuit Judges.

---

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Wynn and Judge Floyd joined.

---

**ARGUED:** Dana Wayne Duncan, DUNCAN DISABILITY LAW, SC, Nekoosa, Wisconsin, for Appellant. Kristina Carol Evans Cole, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Matthew G.T. Martin, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina; Nora Koch, Regional Chief Counsel, Taryn Jasner, Supervisory Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.

---

DIAZ, Circuit Judge:

Angela Lawrence appeals the Social Security Administration's denial of her application for disability benefits. She argues that the administrative law judge failed to resolve an apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* (the "DOT").[1] Specifically, Lawrence contends that her residual functional capacity[2]—which limits her to "simple, routine, repetitive tasks"—may prevent her from performing jobs requiring a General Educational Development reasoning level of two ("Level 2"), contrary to the vocational expert's testimony. She asks that her claim be remanded to the administrative law judge to resolve this apparent conflict. Because we find no conflict between the language describing Lawrence's residual functional capacity and the DOT's definition of Level 2 reasoning, we affirm.

I.

On January 16, 2013, Lawrence applied for disability benefits, claiming that various physical and mental impairments rendered her unable to work in any job. The Social Security Administration denied her application initially and upon reconsideration. It

---

[1] The DOT lists occupations existing in the economy and explains some of their physical and mental requirements. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

[2] Residual functional capacity refers to a claimant's capabilities despite her impairments. 20 C.F.R. § 404.1545(a).

determined that, while her condition kept her from doing her past work at MetLife Insurance Company,[3] it did not prevent her from performing less demanding jobs.

At Lawrence's request, an administrative law judge then held a hearing regarding her claim. The judge followed the required five-step analysis for adjudicating these claims.[4] At step four, he assessed Lawrence's residual functional capacity, finding in relevant part that she could perform jobs limited to "simple, routine repetitive tasks of unskilled work." Accordingly, he determined that Lawrence was unable to work at her former employer in any capacity.

Step five requires the Commissioner to prove, by a preponderance of evidence, that a claimant can do other work that exists in significant numbers in the national economy. *Thomas*, 916 F.3d at 313. To assess Lawrence's ability to do such work, the administrative law judge consulted a vocational expert.

---

[3] Lawrence worked in MetLife's claims department from 1993 to 2012. In her last three years there, she managed over two hundred people, set policy and guidelines for claims adjustors, traveled extensively, engaged in public speaking, and hired and fired employees. She stopped working in early 2012 when her speech and vision became blurred during a conference call, after which she was diagnosed with a number of impairments.

[4] The five steps require the administrative law judge to consider whether the claimant (1) is unemployed, (2) has sufficiently severe and long-lasting impairments, (3) has an impairment that meets or equals the requirements of a listed impairment for a purely medical finding of disability and, if not, (4) whether she can perform her past work given her residual functional capacity and, if not, (5) whether she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (describing the five steps in greater detail). The burden lies with the claimant at the first four steps and with the Commissioner of Social Security (the "Commissioner") at step five. *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019).

The judge and the vocational expert had the following exchange at the hearing (excerpted as relevant):

> Judge: Assume we have a hypothetical person whose age range is from 48 to 50 . . . [who] would be limited to simple, routine, repetitive tasks, unskilled work. . . . Are there any jobs [that this person could perform in the national economy]?
>
> Vocational expert: Yes, sir. Folder, . . . . Classifier, . . . . [and] Router.

The DOT lists each of these jobs as requiring Level 2 reasoning. *See* DOT, No. 369.687-018, 1991 WL 673072 (Folder); DOT, No. 361.687-014, 1991 WL 672991 (Classifier); DOT, No. 222.587-038, 1991 WL 672123 (Router). Level 2 reasoning requires the individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."[5] DOT, App. C, 1991 WL 688702.

Then, as required by agency policy, the administrative law judge asked whether the vocational expert's testimony was consistent with the DOT. *See Thomas*, 916 F.3d at 313. The vocational expert said it was, with one exception irrelevant to this appeal. Lawrence's counsel then cross-examined the vocational expert about several potential inconsistencies. But neither the administrative law judge nor Lawrence's attorney asked whether there was a conflict between Lawrence's residual functional capacity and an ability to perform Level 2 jobs.

---

[5] The DOT's reasoning development scale has six levels in ascending order of complexity. DOT, App. C, 1991 WL 688702.

Relying on the vocational expert's testimony, the administrative law judge ruled that Lawrence's claim failed at step five because she could perform work that exists in significant supply in the national economy. The judge also found that the vocational expert's testimony was consistent with the DOT (with the one irrelevant exception). Lawrence lost her administrative appeal and sued in the district court, which granted the Commissioner's motion for judgment on the pleadings. This appeal followed.

II.

The question presented is whether there is an apparent conflict between Lawrence's residual functional capacity and the DOT's definition of Level 2 reasoning. We review this question de novo. *See Thomas*, 916 F.3d at 311.[6]

An administrative law judge in a disability-benefit case has a duty to identify and resolve any apparent conflicts between the DOT and a vocational expert's testimony. *Id.* at 313 (citing SSR 00-4P, 2000 WL 1898704 at *2 (Dec. 4, 2000)). "To that end, the [administrative law judge] must ask the [vocational expert] whether his or her testimony conflicts with the DOT." *Id.* Even if the vocational expert answers "no," the judge has a

---

[6] In addition to arguing that there is no apparent conflict, the Commissioner contends that we should deny Lawrence's appeal for two other reasons. First, he maintains that Lawrence waived her apparent-conflict argument by not raising it with sufficient specificity in her objections to the magistrate judge's report recommending that the district court grant the Commissioner's motion for judgment on the pleadings. Second, he asks the court to affirm on harmless-error grounds because the record clearly demonstrates that Lawrence can work as a folder, a classifier, or a router. We decline to consider these issues because we find that the administrative law judge did not err.

duty to independently identify and resolve any apparent conflicts before relying on the expert's testimony. *Id.*

To assess whether an apparent conflict exists, we compare the DOT's "express language" with the vocational expert's testimony. *Id.* (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015)). In *Thomas v. Berryhill*, this court found an apparent conflict between the claimant's residual functional capacity, which limited her to jobs involving "short, simple instructions," and Level 2's concept of "detailed but uninvolved instructions." 916 F.3d at 313–14. Lawrence asserts that there is no meaningful difference between Thomas's residual functional capacity and hers, which limits her to "simple, routine, repetitive tasks." We disagree.

Even assuming that "tasks" and "instructions" are synonymous,[7] the key difference is that Thomas was limited to "short" instructions. "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include.

In contrast, the administrative law judge found that Lawrence could perform jobs limited to "simple, routine repetitive tasks of unskilled work." There is no comparable inconsistency between Lawrence's residual functional capacity (as determined by the administrative law judge) and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few [] variables." DOT, App. C, 1991 WL 688702.

---

[7] Indeed, in some instances, "tasks" and "instructions" may, in fact, be synonymous. But we leave that issue for another day, as Lawrence's appeal does not depend on its resolution.

To begin with, detailed instructions are, in the main, less correlated with complexity than with length.  Instructions often include many steps, each of which is straightforward.  Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive.  Further, there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (citing *Webster's Third New Int'l Dictionary* 1191, 2499 (2002)).  Finally, "routine" and "repetitive" tasks may involve a few variables, just as driving directions may vary if a road is closed.

Thus, while there was an apparent conflict in *Thomas*, there is none here.[8]

III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[8] In finding no apparent conflict between "simple, routine, repetitive" and Level 2 reasoning, we join every other circuit to consider the issue.  *See Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (per curiam) (finding no conflict between "simple, repetitive tasks" and Level 2); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795–96 (11th Cir. 2011) (per curiam) ("simple, routine tasks"); *Moore*, 623 F.3d at 604 ("simple, routine and repetitive work activity"); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) ("simple, repetitive and routine work"); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (unpublished) ("simple, routine and repetitive" work); *see also Sawyer v. Colvin*, 512 F. App'x 603, 610–11 (7th Cir. 2013) (unpublished) (finding no conflict between "simple tasks" and Level 3 reasoning).